**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 5, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENNETH ALLEN FRANCIS,

    Defendant - Appellant.

No. 16-1449

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00068-WJM-1)**
_____

Jacob R. Rasch-Chabot, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant–Appellant.

Karl L. Schock, Assistant United States Attorney (Robert C. Troyer, Acting United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff–Appellee.
_____

Before **BRISCOE**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

A jury found Kenneth Allen Francis guilty on three federal firearms charges—namely, two counts of making false statements to a firearms dealer, *see* 18 U.S.C. § 922(a)(6) and one count of unlawful disposition of a firearm to a felon, *see* 18 U.S.C. § 922(d)(1). Those charges stemmed from Francis's straw purchase of two

firearms for a felon working as a confidential informant (CI) with agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In this appeal, Francis raises three issues: (1) whether the government sufficiently proved that he disposed of firearms to a felon (the CI), an element of the § 922(d)(1) offense;[1] (2) whether the district court erred by imposing a four-level sentencing enhancement for trafficking firearms; and (3) whether the district court erred by ordering sex-offender treatment as a special condition of his supervised release. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Francis's § 922(d)(1) conviction and the sex-offender-treatment special condition, but we vacate his sentence and remand for resentencing.

## BACKGROUND

### A. Francis's Straw Purchases

Among his duties as an ATF Special Agent, Ryan Noble monitors the internet for any activity indicating the violation of federal firearms laws. In January 2016, Agent Noble viewed Francis's recently posted YouTube video, entitled "Need Help Getting a Gun." R. vol. 3 at 130:22–23.

In the video, Francis made several incriminating statements:

- "I am making a video to help people, to help Americans who are not able to acquire firearms[.]"
- "I want to make a video to let people know that I am here to help you get your guns. If you can't get a gun because you have a felony, if you can't get a gun because you have a violent crime on your

_____

[1] Francis doesn't challenge his convictions on the two counts of making false statements to a firearms dealer. *See* 18 U.S.C. § 922(a)(6).

2

record, or if you can't get a gun for some other type of stupid reason, I want you to know that I want to help you[.]"

- "I want you to know that the only requirement that I have . . . is that you have a state ID."
- "I don't care what state you are from. I don't care about your background. . . . It just does not matter what you have in your background. . . . I don't care if you have a sex charge. I don't care if you have a violent crime."
- "You're going to have to pay me $50 for my time. Now $50 is a very, very reasonable price because, you know I am basically going to be breaking the law here."
- "When you and I meet up, do me a favor. Don't start talking about what you have in your past."

R. vol. 2 at 109.

Below the YouTube video, Francis listed his phone number, a link to his website, and his e-mail address. Francis's website featured photos of Francis, his phone number, and an embedded version of the "Need Help Getting a Gun" video. The website also had a hyperlink, which read, "Do you need help getting a gun? Are you an American? If so, then I can help. Watch my video." R. vol. 3 at 150:1–5. The hyperlink sent viewers to the YouTube video.

After watching the video, Agent Noble planned an undercover operation to see whether Francis would indeed straw-purchase a firearm. As part of the operation, Agent Noble had ATF Special Agent Christopher Nicolussi (acting as "Nick") send Francis an e-mail requesting Francis's help in straw-purchasing a firearm. Francis responded by requesting that Agent Nicolussi send a text message to the phone number listed at the bottom of the YouTube video. Through exchanged text

3

messages, Francis and Agent Nicolussi scheduled a meeting for January 12, 2016 at a Bass Pro Shops store in Denver, Colorado.

At the meeting in the store's parking lot, Agent Nicolussi handed Francis $1,100 to purchase a firearm. Then the two men walked into the store. Agent Nicolussi told Francis that he wanted an AR-15-style rifle and backed away from the gun counter to avoid any suspicion from the sales clerk. Francis selected a Smith & Wesson M&P 15 OR rifle to purchase for Agent Nicolussi. As required by federal law, the clerk had Francis complete an ATF Form 4473, which federal firearm licensees use to run a background check and record transaction details. 18 U.S.C. § 922(t)(1); 27 C.F.R. §§ 478.102(a), 478.124(a), (c). Once Francis cleared the background check, he bought the rifle.

Then Francis and Agent Nicolussi left the store, with Francis carrying the boxed rifle. In the parking lot, Francis put the box into the back of Agent Nicolussi's undercover truck. The rifle cost $91 more than the advanced $1,100, so Agent Nicolussi paid Francis the difference, as well as Francis's $50 fee. Neither man discussed Agent Nicolussi's criminal history.

Soon afterward, Agent Noble obtained from the store Francis's completed ATF Form 4473 and a copy of the store's security video showing the sale. On the ATF form, "[i]n box 11, question 11A," Francis had "marked yes, indicating that [he]

4

was the actual purchaser of the firearm."[2] R. vol. 3 at 180:20–22. The form advised Francis that he couldn't purchase a firearm on behalf of another person.

Following up on this success, Agent Noble soon ran a second operation. This time, Agent Noble enlisted the help of a CI—an actual felon—with a history of working for ATF. Agent Noble had the CI pose as Agent Nicolussi's coworker in a text message to Francis requesting a straw-purchase of two firearms. In exchange, the CI agreed to pay Francis a $75 fee.

Francis and the CI agreed to meet on January 22, 2016 to purchase the firearms at the Sportsman's Warehouse in Thornton, Colorado. Still posing as the CI's coworker, Agent Nicolussi accompanied the CI to meet Francis. Before the encounter with Francis, ATF agents searched the CI to ensure that he wasn't carrying any money, weapons, or contraband; they attached a recording device to him; and they provided him with $2,000. Further, Agent Noble instructed the CI "to make sure that it was clear to Mr. Francis that the confidential informant was a convicted felon, to make sure that Mr. Francis was aware the firearms were being purchased for the confidential informant, and to make sure that the money transfer would go directly from the confidential informant to Mr. Francis." *Id.* at 177:5–11. The ATF agents also wired Agent Nicolussi with a backup recording device.

---

[2] The record doesn't include the January 12, 2016 Bass Pro Shops ATF Form 4473.

Agent Nicolussi, with the CI in the front passenger seat, drove his undercover truck to the Sportsman's Warehouse parking lot. Francis arrived in the same car that he had driven to the first straw purchase. Agent Noble surveilled the operation by listening to the transmitted audio from Agent Nicolussi's and the CI's recording devices.

Upon arriving, Francis walked to the driver-side window of Agent Nicolussi's undercover truck. Agent Nicolussi told Francis that the CI wanted to buy a "Glock 27 .40 caliber" and a "Glock 43." *Id.* at 296:12–15. The CI added, "I don't want to go in there and cause any confusion." *Id.* at 298:9–10. Agent Nicolussi interpreted this comment as an attempt to tell Francis that "something in [the CI's] background . . . prevent[ed] him from purchasing . . . a firearm himself." *Id.* at 298:18–20. Agent Nicolussi told Francis that the CI "had a bullshit felony back in the day." R. vol. 3 at 299:10–11. The CI told Francis that he wished his convictions had been misdemeanors. He described himself as having a "stereotypical background." *Id.* Francis never asked the CI about his criminal history, and the CI never volunteered his specific convictions.

After this conversation, Francis entered the store, filled out an ATF Form 4473, and waited outside until his background check cleared. Then he went back inside the store and bought a Glock .40 caliber pistol and a Smith & Wesson SD9VE 9-millimeter pistol. After completing the purchase, Francis left the store with the two boxed firearms and put them in the backseat of Agent Nicolussi's undercover truck. The CI paid Francis his agreed $75 fee.

Later that day, Agent Noble obtained from the store Francis's ATF Form 4473 and the store's security video. On the form, Francis had again falsely declared he was the actual purchaser of the two straw-purchased firearms.[3]

On February 10, 2016, a federal grand jury sitting in the District of Colorado indicted Francis on two counts of making a false statement to a firearms dealer, *see* 18 U.S.C. § 922(a)(6), and one count of unlawful disposition of a firearm to a felon, *see* 18 U.S.C. § 922(d)(1). Days later, ATF agents arrested Francis. At trial, a jury found Francis guilty of all three counts.

**B.    Sentencing**

For Francis's sentencing, the probation officer prepared a presentence report (PSR). The PSR recommended a total offense level of 20, which included a four-level firearms-trafficking enhancement under U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2K2.1 (U.S. Sentencing Comm'n 2016). In addition, the PSR recommended imposing sex-offender treatment as a special condition of Francis's supervised release. In support of this condition, the PSR referenced Francis's previous conviction for a crime involving nonconsensual sexual contact with a minor. The PSR reported that for this offense Francis had failed to complete court-ordered treatment. The PSR also noted that while investigating this sex offense, authorities suspected Francis of having had intimate sexual contact with a different minor, this time a twelve-year-old girl.

---

[3] Nor does the record include a copy of the January 22, 2016 Sportsman's Warehouse ATF Form 4473.

7

At his sentencing hearing, Francis objected to the firearms-trafficking enhancement. He disputed that the government had shown that he knew or had reason to believe that the CI had a felony conviction for a crime of violence, controlled-substance offense, or misdemeanor domestic-violence crime. *See* U.S.S.G. § 2K2.1 cmt. n.13(A), (B). In response, the district court wondered aloud whether the enhancement would apply whenever a straw purchaser transferred a firearm to any person whose possession would be unlawful—e.g., to a felon as proved by Francis's § 922(d)(1) conviction. The government then explained that the firearms-trafficking enhancement applies only when a defendant knows or has reason to believe that the transferee is a specific kind of unlawful possessor—namely, one with a felony conviction for a crime of violence or a controlled-substance offense, or with a misdemeanor conviction for a crime of domestic violence. *See* § 2K2.1 cmt. n.13(B).

But the government argued that the enhancement still should apply to Francis:

> By [Francis's] own words, he is targeting individuals [in his YouTube videos] whose possession is unlawful, so that will cover felons. . . . He now goes further, I don't even care if you have a violent crime. . . . The only people that are going to see him are people who have criminal records, not only felons, but individuals who have violent crimes, sex charges.

R. vol. 3 at 532:10–12, 20–21, 533:13–15. The government also emphasized that Francis had cut off the CI[4] when the CI allegedly began talking about his criminal history, and that Francis had asked prospective customers not to tell him anything about their backgrounds.

---

[4] The audio recordings are not in the record.

The district court adopted the government's view, reasoning that "because of the targeted audience, [Francis] knew that those responding to his advertisement would have criminal records." *Id.* at 546:3–5. The court further explained that Francis

> was aware that his clientele would have varying degrees of criminal history. This is evidenced by a statement that he does not care whether his clients have violent crimes, a statement which he mentions twice in the video; and as well he states that he does not care whether his clients and his clientele have a sex charge.

*Id.* at 546:12–18. From the above evidence, the court reasoned that "no other logical conclusion can be gleaned other than the defendant knew and had reason to believe that he was disposing [of] firearms to individuals whose possession and receipt is unlawful as defined by the statute and the guideline."[5] *Id.* at 546:19–23. So the district court applied the four-level enhancement. From an advisory guideline range of 51 to 63 months, the district court sentenced Francis to 60 months of imprisonment.

On a separate matter, the district court imposed sex-offender treatment as a special condition of Francis's supervised release, as recommended in the PSR. The district court lumped this condition with the others, generally saying that they all

---

[5] Though the district court relied heavily on Francis's statements from the YouTube video, we see little in those statements that would not apply to a more circumspect straw purchaser. After all, it makes sense that most straw-purchase customers are prohibited persons under federal law, or value secrecy to combat government conspiracies and the like. Certainly, Francis didn't limit his offer to customers with certified judgments of conviction for the narrow class of qualifying convictions. His advertisement shows he would take whatever customers he could get.

9

were "reasonably related to the factors enumerated in [18 U.S.C. §§] 3553(a) and 3583(d)." *Id.* at 578:11–12. And again generally, the court remarked that the imposed conditions didn't "constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Id.* at 578:12–14. Francis didn't object to the condition.

## DISCUSSION

On appeal, Francis argues three points: (1) that the government failed to sufficiently prove under § 922(d)(1) that the transferee (the CI) was in fact a felon; (2) that the firearms-trafficking enhancement shouldn't apply in calculating his advisory guideline range; and (3) that sex-offender treatment was an improper special condition of his supervised release. We address each argument in turn.

### A.    Proof the CI was a Felon under § 922(d)(1)

We begin with the statutory language defining this crime:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person *knowing or having reasonable cause to believe* that such person—

> (1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[.]

18 U.S.C. § 922(d)(1) (emphasis added). We agree with the district court that this statute contains an element that the firearms transferee actually have a felony

10

conviction at the time of transfer.[6] Francis argues that the district court erred in admitting evidence the government used to prove this element.

On this point, Francis attacks Agent Nicolussi's testimony that the CI was a felon by characterizing that testimony as a "single conclusory assertion as to an essential element of the offense." Appellant's Reply Br. at 15. But Francis didn't object at trial that Agent Nicolussi lacked personal knowledge about the CI's felon status. Even had Francis preserved this evidentiary-foundation objection, we could have done no more than review for an abuse of discretion. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014). But because he did not preserve the issue, he was left to argue for plain error. And Francis hasn't argued for that standard on appeal—meaning he has waived this argument. *United States v. Oldbear*, 568 F.3d 814, 820 (10th Cir. 2009).

Even without this waiver, we would have concluded that Agent Nicolussi's testimony provided the jury a firm basis to find that the CI was a felon. When the prosecutor asked Agent Nicolussi why ATF had used the CI in the second operation, he replied, "Because he had a felony criminal history." R. vol. 3 at 285:13–15. The prosecutor then followed up, "Did you know this specific confidential informant prior to this operation?" *Id.* at 286:4–5. Agent Nicolussi replied, "Yes." *Id.* at 285:6. Certainly, the government could have proved this element better and avoided a time-

---

[6] *See* Pattern Crim. Jury Instr. 10th Cir. 2.43 (2011).

consuming issue on appeal (for instance, by using a transferee whose identity it could

reveal), but this minimal effort—absent any trial objection—suffices here.[7]

**B.      The § 2K2.1(b)(5) firearms-trafficking sentencing enhancement**

In determining the meaning of this guideline enhancement—and how it relates

to § 922(d)(1) from which it sprang—we begin with the language of U.S.S.G.

§ 2K2.1:

> (b) Specific Offense Characteristics
>
> > (5) If the defendant engaged in the trafficking of firearms, increase by 4 levels.
>
> . . . .
>
> 13. Application of Subsection (b)(5).—
>
> > (A)    In General.—Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—
> >
> > > (i)    transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

---

[7] Because we conclude that Agent Nicolussi's testimony authorized the jury's finding that the CI was a felon, we need not, and do not, decide Francis's preserved challenge to an alternate way the government sought to prove the CI's felony conviction. To prove the CI was a felon under § 922(d)(1), the government sought to admit the CI's judgments of conviction, but with the CI's name, among other things, redacted. Francis objected to the admission of the redacted judgments on foundation and relevance grounds. With the court's permission, the government admitted unredacted copies under seal and admitted the redacted copies into evidence. Then Agent Noble testified that the CI's name was on the unredacted copy. The district court overruled Francis's objections, now including objections under the original-documents (best-evidence) rules. *See* Fed. R. Evid. 1001 *et seq.*

> > (ii) *knew or had reason to believe* that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
> >
> > > (I) whose possession or receipt of the firearm would be unlawful; or
> > >
> > > (II) who intended to use or dispose of the firearm unlawfully.[8]

U.S.S.G. § 2K2.1(b)(5) & cmt. n.13(A) (emphasis added).

As earlier mentioned, § 922(d)(1) requires the government prove beyond a reasonable doubt that a defendant disposed of a firearm "to any person knowing or having reasonable cause to believe that such person" was a felon. The guideline tracks this language, requiring the government show by a preponderance that the defendant "knew or had reason to believe" that the firearms transfer would be to a person "whose possession or receipt of the firearm would be unlawful[.]" U.S.S.G. § 2K2.1 cmt. n.13(A). As noted, we interpret the statute as containing an element that the transferee actually have a felony conviction. *See* Pattern Crim. Jury Instr. 10th Cir. 2.43 (2011). Because the guideline derives from the statute, we see no reason to interpret the guideline differently on this point. So we conclude that to obtain the four-level enhancement, the government must show by a preponderance that the

---

[8] The government never argued that Francis knew or had reason to believe that the CI "intended to use or dispose of the firearm unlawfully." *See* U.S.S.G. § 2K2.1 cmt. n.13(A)(ii)(II).

13

transferee was actually an unlawful possessor as defined by the guideline.[9] Here, Francis does not dispute that the CI actually was an unlawful possessor, perhaps because the CI meets this condition, having a qualifying history of felony crime-of-violence convictions.[10]

Francis directs his challenge to the district court's decision to apply the four-level enhancement on two other bases. First, Francis contends that the district court read the guideline too broadly, the court believing that the enhancement applies whenever a defendant knows or has reason to believe that the transferee's possession is unlawful (including, for instance, when the transferee has a garden-variety felony). But our review of the record convinces us that the district court understood the guideline's limited categories of unlawful possession. After all, the district court heard the government correctly explain the guideline. And the district court applied

---

[9] We note that the Sixth Circuit allows the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) even when the transferee is an undercover agent who, obviously, is not an actual felon. *See United States v. Henry*, 819 F.3d 856, 870 (6th Cir. 2016) (allowing the enhancement if the straw purchaser had reason to believe the agent was a felon). We are unpersuaded by this approach, primarily because it departs from the way we interpret the similar wording in 18 U.S.C. § 922(d)(1). We don't ask whether the defendant had reason to believe the transferee was an unlawful possessor until the government establishes that the transferee in fact is an unlawful possessor.

[10] The CI had three Colorado felony robbery convictions. Two were Colorado aggravated robberies, one involving possession of a "real/simulated weapon," R. vol. 3 at 170:13–171:2; Suppl. R. at 3, another the "intent [to] kill/maim/woun[d]" with a weapon. Suppl. R. at 5. These qualify as crimes of violence. *See United States v. Harris*, 844 F.3d 1260, 1271 (10th Cir. 2017) ("Statutory robbery in Colorado is a violent felony under the [Armed Career Criminal Act]."); *see United States v. Crump*, 674 F. App'x 802, 803 (10th Cir. 2017) (concluding that under *Harris* Colorado robbery is a crime of violence under U.S.S.G. § 4B1.2).

14

the enhancement only after deciding that "no other logical conclusion can be gleaned other than [Francis] knew and had reason to believe that he was disposing [of] firearms to individuals whose possession and receipt is unlawful as defined by the statute and the guideline." R. vol. 3 at 546:19–23. So, though we agree with Francis that the district court could have stated its operating framework more clearly, we reject his claim that the court applied the wrong legal standard.

Second, Francis contends that the government's evidence didn't establish by a preponderance that he had reason to believe that the CI fell into the "narrow category of prohibited possessors," *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011), including those with a felony crime-of-violence conviction.[11] The government counters that it met its burden by showing that Francis had targeted violent criminals and others in his YouTube videos and instructed his customers not to inform him of their criminal history. We agree with Francis.

We conclude that the government cannot support this enhancement by simply noting that a percentage of Francis's expected customer base might have a qualifying crime-of-violence conviction. This "there's a chance" method runs counter to the commentary's language, which speaks to firearm transfers to "an individual" whose possession would be unlawful. U.S.S.G. § 2K2.1 cmt. n.13(A)(ii)(I). The proper focus is on what the defendant knew about the specific transferee, not whether by the

---

[11] The government doesn't alternatively contend that Francis had reason to believe that the CI had committed a qualifying controlled-substance offense or misdemeanor domestic violence crime.

law of averages any given customer might qualify as an unlawful possessor as defined by § 2K2.1 cmt. n.13(A)(ii)(I), (B). *See United States v. Asante*, 782 F.3d 639, 643–44 (11th Cir. 2015) (denying the § 2K2.1(b)(5) enhancement because "the Government failed to present any evidence that [the defendant] knew that his conduct would result in a firearm being transferred to such an individual [one convicted of the narrowly defined offenses]"). If courts could read "reason to believe that" to mean "shouldn't be surprised to learn that," then the firearms-trafficking enhancement would apply against almost any multiple-firearm straw purchaser.[12]

And here we must remember too that the ATF agents minimized the CI's supposed criminal history. Agent Nicolussi described the CI's conviction as a "bullshit felony," R. vol. 3 at 299:10, and the CI described himself as having a "stereotypical background," *id.* at 327:19. These statements suggested that the CI did *not* have a conviction for a felony crime of violence. Perhaps the ATF agents feared that Francis wouldn't continue with the straw purchase if they hinted at—or even announced—a criminal history that would trigger the enhancement. Or perhaps they didn't know the guideline's requirements. But the agents wrote the script, and so the government, not Francis, bears the brunt of the script's deficiencies.

We hold that the facts found by the district court didn't suffice to support applying the firearms-trafficking enhancement in calculating Francis's sentence. *See*

---

[12] An exception might be where the straw-purchaser buys firearms for a close family member who he knows has no criminal record but who wants to avoid filling out an ATF Form 4473 for some other reason.

16

*United States v. Cherry*, 572 F.3d 829, 831 (10th Cir. 2009) ("We review de novo whether the facts found by the court support the application of the guideline it selected."); *Garcia*, 635 F.3d at 479–80 (evaluating all the facts to measure whether they sufficed to show that the defendant there had "intended to use or dispose of the firearm unlawfully" under § 2K2.1 cmt. n.13(A)(ii)(II)). In our de novo review of the legal meaning of the disputed guideline, *United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009), we conclude that the district court erred by applying the enhancement on a mere finding that Francis had reason to believe that some of his solicited customers would be unlawful possessors (those convicted of crimes of violence, controlled-substance offenses, or misdemeanor crimes of domestic violence). This goes too far. Instead, the proper focus is on whether Francis had reason to believe that the CI had a conviction in one of the listed categories of offenses. And there, the government failed in its burden to prove this by a preponderance. *See Garcia*, 635 F.3d at 478 ("At sentencing, the government must prove facts supporting a sentencing enhancement by a preponderance of the evidence.").

## C.     The sex-offender-treatment special condition

Francis argues that the district court erred by imposing sex-offender treatment as a special condition of his supervised release. Francis didn't object to this condition at sentencing, so we review for plain error. *United States v. Martinez-Torres*, 795 F.3d 1233, 1236 (10th Cir. 2015). To show plain error, a defendant must demonstrate that the district court committed (1) an error, (2) that is plain, (3) that affects his

17

substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). "An error is plain if it is 'clear or obvious under current law.'" *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (quoting *United States v. Fabiano*, 169 F.3d 1299, 1302–03 (10th Cir. 1999)). A plain error affects a defendant's substantial rights if the error "affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Wiles*, 102 F.3d 1043, 1055 (10th Cir. 1996)). And "[u]nder plain error review, we may vacate special conditions of supervised release only if the record reveals no basis for the conditions." *United States v. Barela*, 797 F.3d 1186, 1192 (10th Cir. 2015). This is because "[i]f the record reveals a basis, there is no reasonable probability that but for the error the defendant's sentence would be different and thus the proceeding's fairness was not impacted." *Id.*

"District courts have broad discretion to prescribe special conditions of release[,]" but that discretion has limits. *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011). The special conditions imposed "must be reasonably related to at least one of the following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs." *Id.* (citing 18 U.S.C. § 3583(d)(1)). The conditions "must involve no greater deprivation of liberty than" reasonably necessary to deter crime, protect the public, and promote the defendant's rehabilitation. *Id.* (citing 18 U.S.C. § 3583(d)(2)). And to explain why it is imposing

18

a special condition, "[a] sentencing court need not provide reasons for each specific special condition that it imposes; rather, it must 'only provide a generalized statement of its reasoning.'" *Id.* at 693 (quoting *United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008)). Still, "the explanation must be sufficient for this court to conduct a proper review." *Martinez-Torres*, 795 F.3d at 1238.

Here, the district court plainly erred because it provided no generalized statement that would justify sex offender treatment—it merely restated the statutory standard. The district court stated during Francis's sentencing hearing that all of the special conditions it imposed were "reasonably related to the factors enumerated in Sections 3553(a) and 3583(d) . . . [and didn't] constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." R. vol. 3 at 578. This is deficient under *Mike* because the court didn't provide "a generalized statement of its reasoning." 632 F.3d at 693. So Francis meets the first and second prongs of the plain error test.

The government argues that the condition was nevertheless proper because the district court adopted the fact-findings in Francis's PSR, which referred to his prior sex offense (the investigation of which unearthed allegations that he had intimate sexual contact with a twelve-year-old girl), and his failure to complete previous court-ordered sex-offender treatment. The government urges that *United States v. Cereceres-Zavala*, 499 F.3d 1211 (10th Cir. 2007), is analogous and ends our inquiry. But Francis's case is easily distinguishable from *Cereceres-Zavala*. There, we held that a district court's citation to a defendant's PSR's calculation method and

19

recitation of the suggested imprisonment range wasn't error and fulfilled 18 U.S.C. § 3553(c)'s requirement that the court provide "a general statement noting the appropriate guideline range and how it was calculated." *Id.* at 1217 (quoting *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1202 (10th Cir. 2007)). But in the present case, the district court didn't even mention the PSR to justify the condition. So even if the PSR contained adequate justifications for the condition, the court didn't reference them.

But it isn't enough that an error be plain: under the plain-error standard's third prong, the error must have also affected Francis's substantial rights. *Olano*, 507 U.S. at 732. And on this record, the court had a basis to impose the sex-offender-treatment special condition. Francis was convicted of a sex offense in 2011, and during the investigation of that crime someone accused him of having intimate sexual contact with a twelve-year-old girl. He failed to complete his previous court-ordered sex-offender-treatment program. Because the record reveals a basis for the sex-offender-treatment condition, Francis cannot show prejudice and harm to his substantial rights. So Francis has failed to meet his burden under plain error review.

**CONCLUSION**

For the above reasons, we AFFIRM Francis's § 922(d)(1) conviction and the sex-offender-treatment special condition, but VACATE his sentence and REMAND for resentencing consistent with this opinion.