**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JASON CORY BYCROFT,

    Defendant - Appellant.

No. 24-7020

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CR-00325-TDD-1)**
_____

John M. Bowlin, of Bowlin & Schall LLC, Greenwood Village, Colorado, for Defendant-Appellant.

Lisa C. Williams, Special Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.
_____

Before **MATHESON**, **EBEL**, and **MORITZ**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

In this direct criminal appeal, defendant Jason Bycroft argues the district court plainly erred in imposing a special condition of supervised release that prohibits his use of the Internet without the prior approval of his probation officer. Specifically,

Bycroft argues the district court erred by imposing the condition without any analysis or explanation of whether it satisfies the relevant statutory requirements. See 18 U.S.C. § 3583(d). We agree that the district court plainly erred by failing to provide any explanation for imposing the Internet use condition. Further, because there is a reasonable probability the district court would not have imposed the condition if it had conducted the proper analysis, Bycroft has satisfied the third and fourth prongs of plain-error review. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we VACATE Bycroft's sentence and REMAND the case for resentencing consistent with this opinion.

## I.     BACKGROUND AND PROCEDURE

In 2021, law enforcement received information from the National Center for Missing and Exploited Children that there was child pornography in a Dropbox account belonging to Bycroft.[1] Officers searched the Dropbox account and found a variety of pornographic material involving minor females. First, there were three videos of Bycroft standing in a pool holding then-six-year-old victim K.J. and attempting to expose and touch her vagina. The videos were taken by Bycroft's wife, Heather. In the third video, Bycroft asks Heather if she's "ready," she replies "yes,"

---

[1] Dropbox is an Internet-based (or "cloud-based") storage service that allows individuals to store their digital files (such as pictures, videos, music, documents, etc.) on Dropbox servers. Though Dropbox can, theoretically, facilitate the sharing of files with others, there is no evidence of any sharing or distribution in this case. Rather, the evidence establishes only that Bycroft used his account for personal file storage.

and defendant moves K.J.'s shorts to the side, exposes K.J.'s vagina to the camera, and touches K.J.'s vaginal area with his finger.

Second, the Dropbox account also contained a video where Bycroft was at a birthday party with then-seven-year-old victim R.B. and told her he needed to "fix" her bathing suit before proceeding to move her suit to the side, expose her vagina, and touch her vaginal area with his finger. Third, officers also found numerous videos where Heather went into changing rooms with a camera hidden in her purse and filmed unsuspecting females. Bycroft can be seen and heard giving Heather instructions in some of the videos. Finally, the Dropbox account contained a variety of other pictures and videos of unidentified prepubescent females engaging in sexually explicit behavior.

A grand jury charged Bycroft with two counts of sexual exploitation of a child/use of a child to produce a visual depiction in violation of 18 U.S.C. § 2251(a), (e) and two counts of possession of a visual depiction in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (one count of each statutory violation was for K.J., while one of each was for R.B.). Bycroft pleaded guilty on all four counts prior to trial and did not execute a written plea agreement.

The United States Probation Office completed a pre-sentence investigation report (PSR). The PSR calculated an advisory guideline range of 292 to 365 months' imprisonment. At the sentencing hearing, the court explained that it had "read everything that's been presented to me. And by 'everything,' I mean every single piece of paper." (III R. 33). The Court also noted that it was "a very challenging

3

sentencing decision" because the court had to balance the severity of the crime and its effect on the community with the fact that defendant appeared "genuinely remorseful" and had "gone above and beyond" what might be expected of someone in his position since his arrest. (Id. at 43–44.) Regarding statutory sentencing requirements, the district court stated:

> In imposing the sentence in this case, I take into account the factors mandated by 18 United States Code Section 3553. I conclude in this case that the Section 3553 factors, carefully considered and taken together, lead to a result entirely in harmony with the application of the advisory guidelines.

(Id. at 45.)

With no objections to the PSR, the district court adopted it and imposed a 292-month sentence on Counts One and Two and 240-month sentences on Counts Three and Four, with all sentences to be served concurrently, followed by a lifetime term of supervised release. (Aple. Br. 3.) The district court also imposed several conditions of supervised release, including one on Internet use:

> The defendant shall not possess or use a computer with access to any on-line computer services at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system or any other public or private network or e-mail system.

(Id. at 3–4.) Bycroft did not object to the Internet use condition at the sentencing hearing. Bycroft timely filed this appeal.

## II.    STANDARD OF REVIEW

Because Bycroft did not object to the imposition of the Internet use condition at sentencing, this court reviews for plain error. United States v. Koch, 978 F.3d 719,

4

724 (10th Cir. 2020) (citing United States v. Malone, 937 F.3d 1325, 1327 (10th Cir. 2019)).  Under this standard, this court will "reverse only if there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quoting Malone, 937 F.3d at 1327).

## III.    DISCUSSION

Bycroft argues on appeal that the district court plainly erred by failing to analyze or explain any basis for imposing the special condition on Internet use.  We agree, and accordingly remand this case to the district court for resentencing consistent with this opinion.  Remanding for resentencing serves two purposes in this case.  First, it gives the district court an opportunity to provide an appellate court with a sufficient record to review the legality of any special conditions imposed.  Second, it compels the district court to conduct the rigorous analysis that we think is appropriate for the Internet use condition imposed here.

### A. Governing law on the imposition of special sentencing conditions

"Although district courts have broad discretion to prescribe conditions on supervised release, that discretion is limited by 18 U.S.C. § 3583(d) and 18 U.S.C. § 3553(a)."  United States v. Blair, 933 F.3d 1271, 1275 (10th Cir. 2019) (citation omitted).  Section 3583(d), when read in conjunction with its references to § 3553(a), provides that a special condition must:

> (1) be "reasonably related" to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or

5

the defendant's educational, vocational, medical, or other correctional needs; (2) "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission.

United States v. Martinez-Torres, 795 F.3d 1233, 1236 (10th Cir. 2015) (quoting

18 U.S.C. § 3583(d)) (alteration in original).

Crucially, we require the district court to provide its reasoning for imposing

any special conditions on the record:

> [B]efore a district court can impose upon a defendant a special condition of supervised release, the district court must analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers the three statutory requirements set out in 18 U.S.C. § 3583(d). [Martinez-Torres, 795 F.3d at 1236.]  Although this court is "not hypertechnical in requiring the court to explain why it imposed a special condition of release—a statement of generalized reasons suffices—the explanation must be sufficient for this court to conduct a proper review. Particularly where the condition of release implicates constitutional interests, such as the right to possess sexually oriented materials involving adults, more detail may be required if the reasons for the restriction are not matters of common knowledge." Id. at 1238.

Koch, 978 F.3d at 725.[2]  Applying this general principle in the specific context of a

ban on Internet use, we have previously stated: "Because an absolute Internet ban is

such an extreme restriction, we think it calls for extraordinarily careful review and

adequately explained supporting findings."  United States v. Egli, 13 F.4th 1139,

1149 n.5 (10th Cir. 2021).

---

[2] An even more complete explanation is required from the district court when a special condition infringes on a fundamental right, see Koch, 978 F.3d at 725, but Bycroft does not argue that access to the Internet constitutes such a right.

**B. The district court plainly erred by failing to provide its reasoning for imposing the special condition on Internet use**

**1. The district court erred**

The district court erred by failing to provide any analysis of the statutory requirements or reasoning for imposing the condition on Internet use.  The court never mentioned the requirements of § 3583(d), nor did it discuss the § 3553(a) factors in the context of the Internet use condition.  As we have previously stated, an analysis need not be "hypertechnical" with detailed reference to the statutes, but the district court simply did no analysis of this condition on the record.  Thus, the court failed to provide us with an explanation of its reasons "sufficient for this court to conduct a proper review."  Koch, 978 F.3d at 725 (quoting Martinez-Torres, 795 F.3d at 1238).

In arguing to the contrary, the government points to the following district court statement from the sentencing hearing:

> In imposing the sentence in this case, I take into account the factors mandated by 18 United States Code Section 3553.  I conclude in this case that the Section 3553 factors, carefully considered and taken together, lead to a result entirely in harmony with the application of the advisory guidelines.

(III R. 45).  As the district court's language indicates, it was in the context of considering the sentence as a whole that the court made this statement, not the Internet usage condition.  This overarching statement that the § 3553(a) factors have been considered may be sufficient for § 3553 itself.  See 18 U.S.C. § 3553(a); id. § 3553(c) (providing that the court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," including why the

7

sentence does or does not fall within the advisory sentencing range). Section 3583(d), however, separately requires consideration of the § 3553(a) factors in the context of imposing the condition of supervised release, to demonstrate that the condition is reasonably related to the § 3553(a) factors.

But the district court never explained how the § 3553(a) factors apply to the condition at issue here nor mentioned the other requirements of § 3583(d), that the special condition must involve no greater deprivation of liberty than necessary for those factors and be consistent with any pertinent policy statements. Thus, the above statement that the sentence as a whole was imposed after considering § 3553(a) does not provide us with an analysis, sufficient to facilitate our review, of whether the Internet use condition satisfies the requirements of § 3583(d). True, the special condition may be justified by generalized—not hypertechnical—reasons, but those reasons must still be specifically explained with regard to the conditions imposed. See United States v. Benvie, 18 F.4th 665, 671 (10th Cir. 2021) ("The district court simply stated as justification for all five special conditions 'that the total combined sanction, without a fine, is sufficiently punitive.' This statement does not sufficiently explain, even in generalized terms, how the special conditions further the requirements of § 3583(d) . . . . Accordingly, given our developing caselaw in this area, it constitutes clear error."). We take this opportunity to emphasize again that "before a district court can impose upon a defendant a special condition of supervised release, the district court must analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers the three statutory

requirements set out in 18 U.S.C. § 3583(d)." Koch, 978 F.3d at 725 (citing Martinez-Torres, 795 F.3d at 1236).

The government also reads the above statement's brief reference to "a result entirely in harmony with the application of the advisory guidelines" as an explanation of the court's reasoning for imposing the Internet use condition. The guidelines specifically recommend three special conditions of supervised release in sex offense cases, one of which is, "[a] condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items." U.S.S.G. § 5D1.3(d)(7)(B). Thus, the government argues that, since the Internet use condition was suggested by the guidelines, the reasoning for imposing it was "common knowledge" that needed no further explanation. (Aple. Br. 11 (quoting Koch, 978 F.3d at 725).)

This argument fails for two reasons. First, the "common knowledge" language from Koch and Martinez-Torres does not eliminate the need for an individualized assessment of the appropriate special conditions. The baseline requirement still applies: "the district court must analyze and generally explain how, with regard to the specific defendant being sentenced, the special condition furthers the three statutory requirements set out in 18 U.S.C. § 3583(d)." Koch, 978 F.3d at 725. We have generally approved restrictions on internet access and have approved "limits" on computer use if a defendant has used internet access in connection with a sex offense, Martinez-Torres, 795 F.3d at 1237. However, we have imposed a higher burden of

sentencing and require specific finding from the district court when the restriction constitutes a complete lifetime ban on internet access. See Egli, 13 F.4th at 1149 n.5.

Here, we are unable to conduct a proper review of the propriety of the Internet use condition because the district court provided no analysis of why it was appropriate in this case. Under Koch, Martinez-Torres, and Egli, this constitutes error.

### 2. The error was plain

Further, this error was plain. An error is plain if it is "clear or obvious under current, well-settled law of this court or the Supreme Court." United States v. Venjohn, 104 F.4th 179, 186 (10th Cir. 2024). As explained above, the requirement that the district court provide its analysis and reasoning for imposing a special condition of supervised release is well-settled under this court's cases, particularly Koch and Martinez-Torres. And we have emphasized that careful review and adequately recorded reasoning is particularly important when the district court imposes extraordinary and broad restrictions like a lifetime ban on Internet use. Egli, 13 F.4th at 1149 n.5. The government points to no cases casting doubt on this requirement nor any case finding that an explanation like the one given by the district court here was adequate. It is clear and obvious that the district court failed to satisfy that requirement here and, therefore, the district court's error was plain.

### 3. The error affected Bycroft's substantial rights

Under the third prong of plain-error review, the appellant must demonstrate that the error affected his substantial rights. Because there is a reasonable probability

the district court would not have imposed the special condition on Internet use if it had undertaken the required analysis, we conclude Bycroft has demonstrated that the district court's error affected his substantial rights.

> An error in failing to make necessary findings affects a defendant's substantial rights if there is a reasonable probability the district court would not have imposed the special condition if it had undertaken the required analysis. [United States v. Burns, 775 F.3d 1221, 1224 (10th Cir. 2014); United States v. Francis, 891 F.3d 888, 898 (10th Cir. 2018).] "Under plain error review, we may vacate special conditions of supervised release only if the record reveals no basis for the conditions. This is because if the record reveals a basis, there is no reasonable probability that but for the error the defendant's sentence would be different and thus the proceeding's fairness was not impacted." Francis, 891 F.3d at 898.

Koch, 978 F.3d at 729.  We first outline our prior decisions addressing the propriety of special conditions on Internet use before applying the principles gleaned from those cases to determine whether there was any basis for the district court to impose the Internet use condition in this case.

We begin with United States v. Blair, 933 F.3d 1271 (10th Cir. 2019).  In that case, the defendant pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b) and (b)(2) after "police discovered a hard drive belonging to Blair with more than 700,000 images of child pornography on it." Id. at 1272.  At sentencing, the district court imposed a condition much like the one in the present case: "The defendant's use of computers and Internet access devices must be limited to those the defendant requests to use, and which the probation officer authorizes." Id. at 1275.  On appeal, we concluded that the district court abused its discretion by imposing this condition because it involved "a greater

11

deprivation of liberty than is reasonably necessary to achieve the goals of supervised release in violation of § 3583(d)(2)." Id.

Our decision in Blair relied primarily on three prior Tenth Circuit cases. First, in United States v. White, we overturned a special condition that prohibited the defendant from "possess[ing] a computer with Internet access throughout his period of supervised release." 244 F.3d 1199, 1201 (10th Cir. 2001). We concluded that the condition was "too broad because it prohibited White from using the Internet for benign tasks like checking the weather or reading the news." Blair, 933 F.3d at 1276. Second, in United States v. Walser, we held that it did not amount to plain error for the district court to impose "a special condition of supervised release barring [the defendant's] use of or access to the Internet without the prior permission of the United States Probation officer" for a three-year term. 275 F.3d 981, 987 (10th Cir. 2001). However, in doing so we noted:

> It may nevertheless be questionable whether the condition imposes "no greater deprivation of liberty than is reasonably necessary" to meet the goals referred to in 18 U.S.C. § 3583(d), since the vagueness of the special condition leaves open the possibility that the probation office might unreasonably prevent Mr. Walser from accessing one of the central means of information-gathering and communication in our culture today. We are not persuaded this concern rises to the level necessary to clear the extremely high hurdle set by the plain error standard, however, and we decline to overturn the condition imposed by the district court.

Id. at 988. Finally, in United States v. Ullmann, we held that the district court did not abuse its discretion by imposing a condition restricting the defendant's Internet use because it did not actually prohibit such use, but rather allowed him to use it subject to certain restrictions and monitoring. 788 F.3d 1260, 1262–64 (10th Cir.

12

2015). However, we noted that language permitting a total prohibition on Internet use, "standing alone, would impermissibly impose a greater deprivation of liberty than reasonably necessary because it suggests the Probation Office may completely ban a means of communication that has become a necessary component of modern life." Id. at 1261.

From these cases, we concluded in Blair that, "[i]t is clear from our published cases that a special condition of release that gives the probation office discretion to ban completely a defendant's use of the Internet, as this condition does, violates [§ 3583(d)(2)]." Blair, 933 F.3d at 1275. Examining the condition imposed in that case—which, recall, is functionally identical to the condition imposed in this case with respect to the probation officer's necessary authorization of Internet access—we concluded that it "completely bans Blair's use of the Internet and offline computers, unless and until the probation office makes some future exceptions to the ban, which it has no obligation to entertain nor to grant." Id. at 1277. Therefore, we concluded the district court abused its discretion by imposing the condition. Id. at 1275–76.

However, we left open the possibility that there might be certain "extreme cases" where a complete Internet ban was permissible. Id. at 1277 (explaining that, "in all but the most extreme cases, a special condition of supervised release that absolutely prohibits the use of the Internet will unreasonably impede a defendant's liberty in violation of section 3583"). Such a case arose just two years later in United States v. Egli, 13 F.4th 1139 (10th Cir. 2021). In Egli, the defendant "twice pled guilty to possessing child pornography and . . . violated his subsequent conditions of

13

supervised release on four occasions by, among other things, possessing unauthorized computers, engaging in unauthorized Internet usage, and viewing and possessing both adult and child pornography." Id. at 1141. After the fourth violation of supervised release, the district court imposed a special condition absolutely prohibiting him from using computers and the Internet. Id.

Reviewing for plain error, we noted that the above cases "offer some support for Egli's assertion that an absolute Internet ban is always unlawful." Id. at 1148. However, we explained that "we have been careful to maintain the possibility that a future case might warrant an absolute ban." Id. Since the record there indicated "that all other less restrictive means have not worked and no better alternatives to an absolute ban remain," we concluded that "we cannot say the district court plainly erred in imposing the absolute ban, because Egli's case might be extreme enough to warrant such a ban." Id. at 1149.

Considering these cases together, we conclude there is a reasonable probability here that the district court would not have imposed the Internet use condition on Bycroft if it had properly considered the requirements of § 3583(d)(2). The record reveals no basis for finding this to be an "extreme case" warranting a lifetime Internet ban. To the contrary, the connection between Bycroft's criminal conduct and the Internet is slight. He used the Internet solely for storage of images and videos, and there would be no material difference if he had stored the images on his own hard drive in his computer. Cf. United States v. Legg, 713 F.3d 1129, 1132 (D.C. Cir. 2013) ("[I]f Legg had not used a computer to log into the website on which

14

he met Detective Palchak, the offense for which he was convicted would not have occurred at all."). In contrast to many child pornography cases, there is no evidence that Bycroft has ever used the Internet to acquire or distribute child pornography. The evidence establishes only that he has used it for his own personal use.[3]

The government argues that the Internet use condition is appropriate because Bycroft's conduct was, in many ways, more egregious than that of the defendants in Walser and Egli, where this court found no plain error in the imposition of similar Internet bans. But Walser itself doubted the propriety of the condition, and, more importantly, it was decided before Blair established the settled law of this circuit that Internet bans are generally impermissible absent extreme circumstances. Blair, 933 F.3d at 1275, 1277. And in Egli we upheld the condition because of the defendant's four violations of his terms of supervised release and the resulting necessity of a complete Internet ban. Egli, 13 F.4th at 1149. The conduct of the initial offense was thus less relevant to the condition imposed in Egli, and there are no equivalent prior violations of less restrictive terms of supervised release at play here to suggest that an absolute ban on Internet usage is warranted.

---

[3] We note also that Bycroft is not scheduled to complete his prison term and begin his lifetime of supervised release until 2042. As we observed in Egli, "the propriety of an absolute ban becomes more unlikely with each passing year, as 'the role that computers and the Internet play in our everyday lives . . . become[s] even more pronounced.'" Egli, 13 F.4th at 1147 (quoting Blair, 933 F.3d at 1277) (alterations in original). Thus, Bycroft's situation is substantially different from that of the defendant in Walser where this court found no plain error in imposing a ban on Internet use for three years beginning around 2003.

The government also cites a variety of out-of-circuit cases upholding bans on Internet use. While it may be true that this would be a closer case in some of our sibling circuits,[4] these cases are of limited relevance here given the relevant, binding case law from the Tenth Circuit on the issue. Furthermore, they are generally distinguishable on their facts. See United States v. Carpenter, 803 F.3d 1224, 1228 (11th Cir. 2015) (upholding Internet ban where defendant shared child pornography over the Internet); United States v. Velez-Luciano, 814 F.3d 553, 560 (1st Cir. 2016) (upholding Internet ban where defendant contacted minor victims on Facebook); United States v. Love, 593 F.3d 1, 12 (D.C. Cir. 2010) ("Consensus is emerging among our sister circuits that Internet bans, while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to 'initiate or facilitate the victimization of children.'").

Finally, the government also suggests that the condition in this case is not a total Internet ban because another condition imposed by the district court requires Bycroft to submit to monitoring of his computer use, indicating that the district court "contemplated [Bycroft] accessing the Internet." (Aple. Br. 16.) But whatever the district court's intent may have been, the plain language of the Internet use condition puts no limit on the discretion of probation officers to completely prohibit Internet use. See Blair, 933 F.3d at 1278–79 (rejecting similar argument from the government

---

[4] See, e.g., United States v. Carpenter, 803 F.3d 1224, 1239 (11th Cir. 2015) ("[O]ur cases have uniformly upheld conditions prohibiting defendants convicted of sex offenses from accessing a computer or the Internet for the duration of their supervised release.").

because "nothing in the record <u>limits</u> the breadth of the plain language of the condition").

In sum, we conclude the record does not reveal a basis for the district court to conclude a lifetime Internet ban is permissible under <u>Blair</u> and <u>Egli</u>.[5]  Therefore, there is a reasonable probability the district court would not have imposed it had the court properly considered the requirements of § 3583(d)(2) and relevant case law. <u>See</u> <u>Koch</u>, 978 F.3d at 729.

### 4. The error seriously affected the fairness, integrity, or public reputation of judicial proceedings

Finally, this court may exercise its discretion to correct a plain error "only if [the error] seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 736 (10th Cir. 2005) (en banc).  We conclude the district court's error in this case satisfies this prong of plain-error review, and accordingly exercise our discretion to correct that error.

This court has explained that it will "not notice a non-constitutional error . . . unless it is both 'particularly egregious' and our failure to notice the error would result in a 'miscarriage of justice.'"  <u>Id.</u>  When considering errors where, as here, the

---

[5] We note, however, that the district court is empowered to take new evidence if it concludes doing so is necessary to properly analyze the propriety of the Internet use condition.  <u>See</u> <u>United States v. Ortiz</u>, 25 F.3d 934, 935 (10th Cir. 1994) ("[D]e novo resentencing permits the receipt of any relevant evidence the court could have heard at the first sentencing hearing.").  For instance, there is some suggestion in the record that Bycroft might have had child pornography in his Dropbox account that did come from the Internet, and this fact might be relevant to the propriety of a condition on Internet use.  However, the district court is not required or expected to take in new evidence or engage in any particular line of inquiry.

district court fails to explain its reasoning for imposing special conditions of supervised release, this court has generally found the fourth prong satisfied where the "conditions were likely more severe than the ones the district court would have imposed had it fulfilled its obligation to explain its reasoning." Burns, 775 F.3d at 1225 (quoting United States v. Doyle, 711 F.3d 729, 736 (6th Cir. 2013)). In United States v. Burns, we held it was plain error for the district court to impose restrictions on the defendant's contact with his daughter without making the required findings. Id. In doing so, we concluded the fourth prong was satisfied with little discussion, stating: "the district court likely would have softened the contact restrictions if the issue had been raised. As a result, the error seriously affected the fairness and integrity of the proceedings." Id. (citing Doyle, 711 F.3d at 736).

Several other Tenth Circuit cases have relied on Burns to conclude that the fourth prong is satisfied, and the fairness and integrity of judicial proceedings are affected, when the imposition of special conditions likely would not have been imposed absent the district court's erroneous failure to consider them. See Benvie, 18 F.4th at 671 ("It is reasonably probable that if the district court had explained its reasoning for the conditions and ensured that its reasoning was supported by the record, then the court may have refrained from imposing some, if not all, of the conditions. [See Burns, 775 F.3d at 1225]. Thus, this omission affects substantial rights. For the same reasons the first three elements of plain error are met, so is the fourth. See id."); Koch, 978 F.3d at 730 ("The conclusion that the record is devoid of any basis to support the imposition of the Sexual Material Prohibition, along with the

18

concomitant conclusion that it is reasonably probable the district court would not have imposed the condition had the issue been considered at sentencing, likely satisfies Koch's burden [under the fourth prong].").

We reach the same conclusion here. The probation office's ability to ban Bycroft's use of the Internet will have serious implications for the rest of his life. Not only is the Internet increasingly necessary in everyday life, see Egli, 13 F.4th at 1147, but the condition applies to Bycroft's Internet use for employment purposes as well. To allow such a substantial infringement when there is a reasonable probability it was erroneously imposed would affect the fairness and integrity of judicial proceedings.

## IV.    CONCLUSION

The district court plainly erred in imposing the special condition of supervised release on Bycroft's Internet use without any analysis or reasoning. Because Bycroft has also satisfied both the third and fourth prongs of plain-error review, we vacate Bycroft's sentence and remand this case for resentencing consistent with this opinion.