**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTIAN FERRARI,

Defendant - Appellant.

No. 24-6007

D.C. No.
3:23-cr-01091-
BAS-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted December 4, 2025
Pasadena, California

Filed March 23, 2026

Before: Consuelo M. Callahan and Lucy H. Koh, Circuit
Judges, and J. Campbell Barker, District Judge.*

Opinion by Judge Koh

---

* The Honorable J. Campbell Barker, United States District Judge for the Eastern District of Texas, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel affirmed the district court's application of a sentencing enhancement for engaging in firearms trafficking in a case in which Christian Ferrari pled guilty to four counts of willfully dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A).

Pursuant to § 2K2.1(b)(5) of the 2021 United States Sentencing Guidelines, a sentencing enhancement applies "[i]f the defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5) (2021). Application Note 13 states that the firearms trafficking enhancement applies if the defendant "knew or had reason to believe" that they disposed "of a firearm to an individual (I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1, cmt. n.13(A) (2021).

The question presented was whether Application Note 13 requires that the person to whom the defendant transferred the firearm in fact was an unlawful possessor or intended to use the firearm unlawfully.

Rejecting the government's argument that Ferrari failed to preserve the argument he raised in this appeal, the panel reviewed de novo Ferrari's argument that the district court misinterpreted the enhancement.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Following the Sixth, Seventh, and Eleventh Circuits, the panel held that the plain text of Application Note 13 does not require it to be true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. The panel rejected as unpersuasive Ferrari's arguments for why the court should depart from the plain text, which largely relied on out of circuit interpretations of criminal statutes distinct from the sentencing enhancement at issue here. Because there is no reason to depart from the plain text, the panel held that Application Note 13(A) to § 2K2.1(b)(5) of the 2021 Sentencing Guidelines does not require that what the defendant had reason to believe was in fact true.

On appeal, Ferrari did not dispute that he had reason to believe the undercover agents to whom he sold firearms were unlawful possessors or intended to use the firearms unlawfully. Therefore, the district court correctly interpreted Application Note 13 and did not abuse its discretion by applying the firearms trafficking enhancement.

---

**COUNSEL**

Andrew R. Haden (argued) and Shital Thakkar, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Adam Gordon, United States Attorney; United States Department of Justice, San Diego, California, for Plaintiff-Appellee.

Katherine M. Hurrelbrink (argued), Assistant Federal Public Defender, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

**OPINION**

KOH, Circuit Judge:

Pursuant to § 2K2.1(b)(5) of the 2021 United States Sentencing Guidelines, a sentencing enhancement applies "[i]f the defendant engaged in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5) (2021). Application Note 13 states that "Subsection (b)(5) applies . . . if the defendant . . . knew or had reason to believe that" the defendant disposed "of a firearm to an individual (I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully."[1] U.S.S.G. § 2K2.1, cmt. n.13(A) (2021). The question presented is whether Application Note 13 requires that the person to whom the defendant transferred the firearm in fact was an unlawful possessor or intended to use the firearm unlawfully. We hold that it does not. Accordingly, we affirm.

---

[1] The parties agree that the 2021 Sentencing Guidelines govern this case. The firearms trafficking enhancement was amended in 2023, moving the text of Application Note 13 into the guideline itself with only minor changes that are not relevant to this appeal. *See* U.S.S.G. § 2K2.1(b)(5)(C) (2023) ("If the defendant (C)(i) transported . . . or otherwise disposed of . . . two or more firearms *knowing or having reason to believe* that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; . . . or (III) intended to use or dispose of the firearm or ammunition unlawfully . . . increase by 5 levels[.]"(emphasis added)). Because Ferrari's offense conduct occurred in March to May 2023, nearly six months before the 2023 amendments went into effect on November 1, 2023, the 2021 Sentencing Guidelines govern.

## BACKGROUND

### I.  Factual Background

This case began in January 2023, when a confidential informant told the Riverside Sheriff's Office that Christian Ferrari ("Ferrari") was unlawfully manufacturing and selling privately made firearms, which are firearms "made by individuals who buy parts and then use various specialized tools to construct and assemble the parts into a functional firearm." Ferrari did not have the required Federal Firearms License ("FFL") from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to sell firearms.

Although federal and state law required Ferrari to serialize and register the firearms once assembled, Ferrari did not do so. *See* 26 U.S.C. §§ 5841, 5842(a); *Privately Made Firearms*, Bureau of Alcohol, Tobacco, Firearms, and Explosives, https://perma.cc/K6LS-GFUP (explaining that privately made firearms must be serialized if made to sell for profit); Cal Pen. Code § 29180 (requiring the serialization of any firearm made in California). Without a serial number or registration with state or federal authorities, the firearms that Ferrari made were untraceable. Such untraceable firearms are commonly known as "ghost guns."[2]

Ferrari sold short-barreled rifles ("SBRs"), which have a barrel length of less than 16 inches, making them easier to conceal. It is illegal to possess or receive a SBR that is not registered in the National Firearms Registration and Transfer

---

[2] Not all privately made firearms are ghost guns, and not all ghost guns are privately made. A firearm that is privately made, but serialized and registered, is not a ghost gun. A firearm that is made by a commercial manufacturer, but not serialized or registered, is a ghost gun but not privately made.

Record. *See* 26 U.S.C. §§ 5841, 5861(d). Ferrari did not register the SBRs he sold.

After receiving the tip about Ferrari, the Riverside Sheriff's Office forwarded the information and Ferrari's phone number to ATF. The Sheriff's Office told ATF that Ferrari was expecting a call from someone interested in purchasing firearms. Undercover ATF agents then began communicating with Ferrari via text message. In total, in four separate transactions between March and May 2023, Ferrari, without an ATF FFL, sold the undercover agents 22 ghost AR-15 type rifles, including 20 SBRs, for $23,300 in cash. Each transaction took place in the undercover ATF agents' vehicle parked in parking lots. Ferrari never asked for or provided any paperwork, never conducted any background checks, and never exchanged any form of identification during any of these transactions.

The first transaction took place on March 13, 2023, in a Walmart parking lot, where Ferrari sold the undercover agents two ghost AR-15 type rifles for $2,300 in cash. After placing the cardboard box containing the illegal firearms in the undercover agents' vehicle, Ferrari got into the front seat where the agents paid Ferrari in cash. Ferrari then offered to sell the agents more firearms, including SBRs.

Just eleven days later, on March 24, 2023, the undercover agents and Ferrari conducted a second transaction in the parking lot of the Parkway Bowl bowling alley. In this second transaction, Ferrari sold the undercover agents five ghost AR-15 type SBRs approximately 9.25 inches in barrel length for $5,500 in cash. Ferrari again placed a cardboard box containing the illegal firearms in the undercover agents' vehicle. Once in the undercover agents' vehicle, Ferrari asked the undercover agents, "That short

enough for you?" Ferrari also explained that he could "keep them coming," and offered to sell the undercover agents a SBR with an attached suppressor for around $10,000. Suppressors, also known as "silencers," are devices "for silencing, muffling, or diminishing the report [the sound produced when a gun is fired] of a portable firearm." 18 U.S.C. § 921(a)(25).

The third transaction took place less than three weeks later, on April 12, 2023, in the same Parkway Bowl parking lot. Ferrari again sold the undercover agents five ghost AR-15 type SBRs for $5,500 in cash, placing a cardboard box containing the illegal firearms in the undercover agents' vehicle. This time the undercover agents told Ferrari that "these guns were going to Northern California to protect marijuana grows [sic] and that an associate wanted 10 more to take to Mexico." In response, Ferrari "agreed to sell 10 more SBRs for $10,000 in about a month."

About a month later, on May 9, 2023, agents arrested Ferrari during the fourth transaction in a Vons grocery store parking lot. Ferrari placed two cardboard boxes containing five SBRs each in the undercover agents' vehicle. Ferrari then explained to the undercover agents that "laws were making it harder to get parts in California, so he had to source them from out of state," and the undercover agents again indicated that the firearms would go to Mexico. After this exchange, the undercover agents arrested Ferrari. Following his arrest, a consensual search of Ferrari's phone revealed that Ferrari had searched online "is it illegal to buy as many upper receivers in california [sic.] as you want?"[3]

---

[3] An upper receiver is a component of an AR-15 style rifle.

## II. Procedural Background

On January 29, 2024, Ferrari pled guilty, without a plea agreement, to four counts of willfully dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). As relevant to this appeal, the Presentence Investigation Report ("PSR") recommended a four-level enhancement for firearms trafficking pursuant to U.S.S.G. § 2K2.1(b)(5) and Application Note 13. Specifically, the PSR stated that Ferrari "had reason to believe" that the firearms would be used for unlawful purposes because Ferrari "readily agreed to sell 10 more SBRs for $10,000 . . ." even after the undercover agents told Ferrari that "the five SBRs they were purchasing were going to Northern California to protect marijuana grows." The PSR recommended a 60-month sentence.

Ferrari objected to application of the firearms trafficking enhancement. Ferrari argued that he did not have "reason to believe" that the undercover agents were unlawful possessors or that they intended to use the firearms unlawfully. According to Ferrari, "[t]here [was] no evidence that the officer's possession would have been unlawful if the facts were as Mr. Ferrari understood them" because the undercover agents "requested the firearms for [their] own purchase." Ferrari downplayed the undercover agents' explicit statements that the firearms would go to "protect marijuana grows" in Northern California as merely "quick references to providing the firearms to others."

Ferrari's sentencing memorandum requested "a sentence of 24 months and a term of supervised release of three years." Ferrari argued that 24 months was an appropriate sentence because Ferrari was "just" 22 years old "at the time of the offense" and considering "[t]he impact of [Ferrari's] untreated ADHD."

The district judge overruled Ferrari's objection to application of the firearms trafficking enhancement. The district judge explained that "Mr. Ferrari had to know or have [had] reason to believe that the" firearms would be used for unlawful purposes. Unlike the PSR, however, the district judge based that finding not "solely on the statements . . . by the law enforcement officers" that the firearms would go protect marijuana grows in Northern California. Rather, the district judge stated:

> "I'm basing it . . . [on the fact] that Mr. Ferrari was selling the firearms in a parking lot inside a car. They were un-serialized short-barreled rifles. He was accepting cash. It clearly, seems to me, was for unlawful purposes. [sic] Otherwise, why would those individuals be seeking weapons like that for cash in a parking lot?"

The district judge thus relied on the overall circumstances of Ferrari's illegal firearms sales to conclude that Ferrari "had reason to believe" that the undercover agents would use the firearms unlawfully. Relevant to this appeal, the district judge applied the firearms trafficking sentencing enhancement even though it was not true that the undercover agents intended to use the firearms unlawfully.

Ferrari's sentencing guideline range was 46 to 57 months. The district court departed downward two levels "for [Ferrari's] youth," "military service[,] and family support." The district court noted that, when asked, Ferrari did not "have an explanation" for what he did, which the district court attributed to Ferrari's "youth" and Ferrari's "brain [] not [being] fully formed." Ferrari's resulting

guideline range was 37 to 46 months. The district court sentenced Ferrari to 37 months. Ferrari timely appealed his sentence.

## STANDARD OF REVIEW

"We review the district court's interpretation of the United States Sentencing Guidelines de novo, its application of the Guidelines to the facts of the case for abuse of discretion, and its factual findings for clear error." *United States v. Tat*, 97 F.4th 1155, 1160 (9th Cir. 2024) (citing *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc)).

## DISCUSSION

Ferrari appeals the district court's application of the firearms trafficking enhancement. On appeal, Ferrari abandons his argument before the district court that he did not have "reason to believe" that the undercover agents to whom he sold the firearms were unlawful possessors or that they intended to use the firearms unlawfully. Instead, Ferrari argues that in order to apply the firearms trafficking enhancement, it must also be true that the undercover agents were unlawful possessors or intended to use the firearms unlawfully. Ferrari's argument largely relies on out of circuit cases interpreting similar language in two federal criminal firearms statutes. *See* 18 U.S.C. § 922(a)(5), (d)(1).[4]

---

[4] Section 922(a)(5) of the federal criminal code states that "it shall be unlawful . . . for any person . . . to transfer . . . any firearm to any person . . . who the transferor *knows or has reasonable cause to believe* does not reside in . . . the State in which the transferor resides." (emphasis added).

The government responds with two arguments. First, the government contends that Ferrari did not preserve his argument for appeal, and thus plain error review applies. Second, the government argues that Application Note 13 requires only that the defendant "had reason to believe" the transferee was an unlawful possessor or intended to use the firearm unlawfully and does *not* require it to be true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. We address both arguments in turn.

## I.  Waiver

The government argues that Ferrari failed to preserve the argument he raises in this appeal, namely, that Application Note 13 requires it to be true that the transferee was an unlawful possessor or intended to use the firearms unlawfully. According to the government, that argument is "materially different" from the argument Ferrari raised before the district court. Before the district court Ferrari argued only that he did not have "reason to believe" that the undercover agents were unlawful possessors or intended to use the firearms unlawfully. The government thus contends that Ferrari failed to preserve his argument for appeal because the district court "never had the opportunity to address the claims being now asserted."

The government's argument conflicts with *United States v. Hong*, 938 F.3d 1040 (9th Cir. 2019). *Hong* held that a defendant's arguments challenging the applicability of a

---

Section 922(d)(1) of the federal criminal code states that "it shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person *knowing or having reasonable cause to believe* that such person . . . is under indictment, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." (emphasis added).

sentencing enhancement may "shift[] on appeal" as long as the "basic claim remains the same": the sentencing enhancement does not apply. *Id.* at 1052 (internal quotation marks and citation omitted); *see also United States v. Wahid*, 614 F.3d 1009, 1016 (9th Cir. 2010) ("[C]laims, not arguments are preserved on appeal.") (citation omitted). Hong challenged the district court's application of "a two-level obstruction of justice enhancement," which required the defendant to (1) willfully (2) obstruct the investigation, prosecution, or sentencing of (3) the instant offense or a closely related offense. *Hong*, 938 F.3d at 1045, 1051-52. Before the district court, Hong argued that the second element was not met. *Id.* at 1052. On appeal Hong argued that the first and third elements were missing. *Id.* Still, we held that "Hong's basic claim remain[ed] the same—that his communications with co-schemers were not obstruction." *Id.* (internal quotation marks and citation omitted).

This case is like *Hong*, and the government makes no attempt to distinguish it. On appeal Ferrari presses the same basic claim that he raised below: "the [firearms trafficking] enhancement does not apply to him because his case does not fit the terms of Application Note 13." Before the district court Ferrari argued he did not have "reason to believe" the undercover agents were unlawful possessors or intended to use the firearms unlawfully. On appeal Ferrari argues that Application Note 13 requires it to be true either that the undercover agents were unlawful possessors or intended to use the firearms unlawfully. Those are two different arguments in support of the same claim. *See Hong*, 938 F.3d at 1052.

Because Ferrari preserved his claim challenging the applicability of the firearms trafficking enhancement, we review de novo Ferrari's argument that the district court

misinterpreted Application Note 13. *See Tat*, 97 F.4th at 1160.

## II.  The Firearms Trafficking Enhancement

We first analyze the text of Application Note 13, concluding that it does not require it to be true that the transferee was an unlawful possessor or intended to use the firearms unlawfully. All that is required is that the defendant had reason to believe the transferee was an unlawful possessor or intended to use the firearm unlawfully. We then address Ferrari's arguments that we should depart from the ordinary meaning of Application Note 13's text and find none persuasive.

### A.  The plain text of Application Note 13 does not require the defendant's beliefs to be true

Application Note 13's text does not require it to be true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. Section 2K2.1(b)(5) of the 2021 Sentencing Guidelines provides that, "[i]f the defendant engaged in the trafficking of firearms, increase by 4 levels." U.S.S.G. § 2K2.1(b)(5) (2021). Application Note 13 states that:

> Subsection (b)(5) applies . . . if the defendant—
>
> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual … and
>
> (ii) knew or *had reason to believe* that such conduct would result in the transport,

> transfer, or disposal of a firearm to an individual—
>
>> (I)  whose possession or receipt of the firearm would be unlawful; or
>>
>> (II) who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1(b)(5), cmt. n.13(A) (2021) (emphasis added).

We interpret Sentencing Guidelines and Application Notes as we do statutes, "by turning to the text" and using the "ordinary tools of statutory interpretation." *United States v. Herrera*, 974 F.3d 1040, 1047 (9th Cir. 2020) (internal quotation marks and citation omitted) (interpreting U.S.S.G. § 2B1.1(b)(2)(A)(i)); *see also United States v. Sadler*, 77 F.4th 1237, 1244-45 (9th Cir. 2023) (interpreting Application Note 6 to U.S.S.G. § 4A1.2 using the ordinary tools of statutory interpretation). "Application Notes . . . serve to interpret and explain the Guidelines for district courts." *United States v. Prien-Pinto*, 917 F.3d 1155, 1157 (9th Cir. 2019) (simplified).

In this case, the parties do not dispute the interpretation of the firearms trafficking enhancement itself. *See* U.S.S.G. § 2K2.1(b)(5) (2021). Rather, the parties agree that it was proper for the district court to consider Application Note 13 to determine whether the enhancement applied. Accordingly, we address only the parties' dispute over Application Note 13's meaning.[5]

---

[5] Thus, this case is like *United States v. Lucas*, where the en banc court stated that "[b]ecause the parties have assumed that Application Note 2 applies, the court does as well." 101 F.4th 1158, 1160 n.2 (9th Cir. 2024)

The ordinary meaning of Application Note 13's plain text strongly supports the government's position, that it need *not* be true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. Here, Application Note 13's text states that the firearms trafficking enhancement applies if the defendant "had reason to believe" that the defendant's conduct would transfer a firearm to (I) an unlawful possessor or (II) someone who intended to use the firearm unlawfully.

"[S]tatutory terms bear their ordinary meaning." *Niz-Chavez v. Garland*, 593 U.S. 155, 163 (2021). "[D]ictionary definitions . . . capture the common contemporary understandings of the word" and are thus important evidence of "the plain meaning of [] terms" at the time they were used. *United States v. Kirilyuk*, 29 F.4th 1128, 1137 (9th Cir. 2022) (consulting English language dictionaries from the late 1980s and 1990s to discern the ordinary meaning of "loss" when interpreting U.S.S.G. § 2B1.1) (internal quotation marks and citations omitted).

The Sentencing Commission first used the "reason to believe" language in 1987. *See* U.S.S.G. § 2K2.3(b)(2) (1987 ed.). In 1987, the Random House Dictionary of the English Language defined "reason" as "a basis or cause, as for some belief" and "believe" as "to have confidence in the truth . . . of something." The Random House Dictionary of

---

(en banc). This case is not like *United States v. Castillo*, where the parties disputed whether it was proper to consider Application Note 1 to interpret § 4B1.2(b) of the United States Sentencing Guidelines. 69 F.4th 648, 653-56 (9th Cir. 2023) (holding that application notes are not controlling when interpreting sentencing guidelines unless all the requirements for deference to an agency's interpretation of its own regulations identified in *Kisor v. Wilkie*, 588 U.S. 558 (2019), are met).

the English Language 190, 1608 (2d. Ed. 1987).[6] Putting those definitions together, a "reason to believe" is a "basis or cause" "to have confidence in the truth of something." The ordinary meaning of the plain text therefore does *not* require it to be true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. It merely requires the defendant to have had a "basis" "to have confidence in the truth" that the transferee was an unlawful possessor or intended to use the firearm unlawfully.

A person may have a "basis" "to have confidence in the truth of something" even if it is not actually true. The facts of this case are an apt demonstration. Without an FFL, Ferrari sold 22 AR-15 style rifles, including 20 SBRs, that were not serialized or registered in cardboard boxes for $23,300 in cash delivered inside undercover ATF agents' vehicles in parking lots. Ferrari made these sales without ever asking for or providing any documentation, conducting any background checks, or exchanging any form of identification. The undercover ATF agents told Ferrari that the firearms would be used to protect marijuana grows in Northern California and would be transported to Mexico. On appeal, Ferrari has abandoned his factual argument that he did not have "reason to believe" that the undercover agents were unlawful possessors or intended to use the firearms unlawfully.

Nothing else in Application Note 13 requires that what the defendant "had reason to believe" must *also* be true.

---

[6] That is consistent with the meaning of those terms today, as the Oxford English Dictionary defines "reason" as "a cause, ground, or motive" and "believe" as "to have confidence or faith in . . ." *See Reason*, Oxford English Dictionary, https://perma.cc/3CRE-KPXS; *Believe*, Oxford English Dictionary, https://perma.cc/5U4K-R2LD.

Ferrari does not identify a subsection that requires the transferee to *in fact* be an unlawful possessor, or to *actually* intend to use the firearm unlawfully. Subsection (ii) of Application Note 13(A) only requires that the defendant "had reason to believe" as much. Nor does Ferrari point to any specific language in the text that would require it to be true.

The Sentencing Commission could easily have drafted Application Note 13 to say what Ferrari argues it says, by removing the "knew or had reason to believe" language from subsection (ii). Then subsection (ii) would state that the firearms trafficking enhancement applies if "such conduct would result in the transport, transfer, or disposal of a firearm to an individual (I) whose possession . . . would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." In that case, the firearms trafficking enhancement would only apply if it was true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. That is not, however, what Application Note 13 says.

Virtually every Circuit to have addressed Ferrari's argument agrees that Application Note 13 does not include an "and it must be true" requirement. The Seventh Circuit held that, "[g]iven the 'reason to believe' language in the application note, [] we agree with the government that the confidential source need not actually be a prohibited person." *United States v. Prieto*, 85 F.4th 445, 449 (7th Cir. 2023). The Sixth Circuit reasoned that "the agent need not have *actually* been a felon for § 2K2.1(b)(5) to apply. The Guidelines merely require [the defendant] to have 'had reason to believe' that the agent's 'possession or receipt of the firearm would be unlawful.'" *United States v. Henry*, 819 F.3d 856, 870 (6th Cir. 2016) (quoting U.S.S.G. § 2K2.1,

cmt. n.13(A)(ii)). And the Eleventh Circuit noted that the "reason to believe" language focuses on "the circumstances known to the defendant," not "what *actually* happened to the firearms." *United States v. Asante*, 782 F.3d 639, 644 (11th Cir. 2015) (emphasis added).

We agree with the Sixth, Seventh, and Eleventh Circuits that the plain text of Application Note 13 does *not* require it to be true that the transferee was an unlawful possessor or intended to use the firearm unlawfully. It only requires that the defendant "had reason to believe" that was the case. As the Eleventh Circuit aptly stated, "what *actually* happened to the firearms" is irrelevant to what the defendant "had reason to believe." *Id.* (emphasis added).

Next, we consider Ferrari's arguments for why we should depart from the plain text.

## B. There is no reason to depart from the plain text of Application Note 13

Ferrari raises three arguments for why we should not interpret Application Note 13 according to the plain text of "reason to believe." None relies on binding authority and, for the reasons explained below, none is persuasive.

### 1. The Tenth Circuit's *Francis* decision

Ferrari's primary argument is that we should follow the Tenth Circuit's interpretation of Application Note 13, according to which the firearms trafficking enhancement only applies if "the transferee was actually an unlawful possessor" or actually intended to use the firearm unlawfully. *United States v. Francis*, 891 F.3d 888, 896 (10th Cir. 2018). *Francis* is the sole outlier in interpreting Application Note 13 this way and departed from the ordinary meaning of "reason to believe" without using any of the

ordinary tools of statutory interpretation. The only reason *Francis* provided for doing so is the Tenth Circuit's model jury instruction for a separate criminal statute, 18 U.S.C. § 922(d)(1). *Id.* at 895-96. As Ferrari concedes, the Ninth Circuit has not adopted this interpretation of § 922(d)(1).

Section 922(d)(1), which is *not* the firearms trafficking enhancement in dispute here, makes it unlawful to transfer a firearm "to any person knowing or *having reasonable cause to believe* that such person" has been indicted for or convicted of a felony. 18 U.S.C. § 922(d)(1) (emphasis added). The Tenth Circuit's model jury instruction interprets § 922(d)(1) to "contain[] an element that the firearms transferee actually have a felony conviction at the time of transfer." *Francis*, 891 F.3d at 895. The Tenth Circuit's model jury instruction provides that the elements of § 922(d)(1) are:

> *First*: the defendant knowingly sold a firearm to [name of person]
>
> *Second*: at the time of the sale, [name of person] was [a person in a prohibited category . . .]; and
>
> *Third*: at the time of sale, the defendant knew or had reasonable cause to believe that [name of person] was [a person in a prohibited category . . .]"

Tenth Cir. Pattern Crim. Jury Instructions 2.43 (2025 ed.) (brackets and emphasis in original). The Tenth Circuit's model jury instruction thus requires (1) that it is true that the transferee was a person in a prohibited category and (2) that the defendant "knew or had reasonable cause to believe

that." However, the Tenth Circuit's model jury instruction, *Francis*, and Ferrari do not cite a Tenth Circuit case that has adopted this interpretation of § 922(d)(1). Nonetheless, in *Francis*, the Tenth Circuit followed the § 922(d)(1) model jury instruction to interpret the firearms trafficking enhancement. "Because the guideline derives from the statute, we see no reason to interpret the guideline differently on this point." *Francis*, 891 F.3d at 896.

By contrast, the Ninth Circuit's model jury instruction does not require it to be true that the transferee was a person in a prohibited category. The Ninth Circuit's model jury instruction states:

> First, the defendant knowingly sold [*specify firearm*] [*specify ammunition*] to [*name of unauthorized purchaser*]; and
>
> Second, the defendant knew or had reasonable cause to believe that [*name of unauthorized purchaser*] was [*specify applicable prohibited status from 18 U.S.C. § 922(d)(1)-(9)*]."

Manual of Model Crim. Jury Instructions for the Ninth Circuit, § 14.11 (2022 ed.) (brackets and emphasis in original). Our model jury instruction does not require the transferee's status as a prohibited possessor to be true because no Ninth Circuit case has adopted such a reading of § 922(d)(1).

Ferrari concedes that the Ninth Circuit has not adopted the Tenth Circuit's model jury instruction's interpretation of

18 U.S.C. § 922(d)(1), but points to the Comment to the Ninth Circuit's model jury instruction. The Comment says:

> Section 922(d)(1) makes it unlawful to sell or otherwise dispose of a firearm to a person who "is under indictment for, or has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." The Committee recommends that the specific crime be stated in the instruction. . . . *Whether a particular crime is punishable by imprisonment for a term exceeding one year is a matter of law.*

*Id.* (quoting 18 U.S.C. § 922(d)(1)) (emphasis added). Ferrari argues this comment "gels with the Tenth Circuit's reading" of § 922(d)(1).

The Comment does not explicitly endorse, or assume, Ferrari's preferred reading of § 922(d)(1). The Comment concerns § 922(d)(1)'s requirement that the buyer be indicted for, or convicted of, a qualifying crime, and states that whether a crime qualifies "is a matter of law." Everything the Comment says about the requirement in (d)(1) is equally consistent with a reading of the statute that does *not* require the government to prove the buyer *actually* had a qualifying conviction. Whether the crime qualifies is a matter of law, not a matter of the defendant's beliefs.

If the Ninth Circuit wanted to endorse the Tenth Circuit's model jury instruction's reading of § 922(d)(1), it could do so explicitly. As Ferrari concedes, the Ninth Circuit has not. *Francis* thus provides no persuasive reason to depart from Application Note 13's plain text.

2.   Interpretations of 18 U.S.C. § 922

Next, Ferrari points to out of circuit interpretations of 18 U.S.C. § 922(a)(5) and (d)(1), which again are not the firearms trafficking enhancement in dispute here. The Ninth Circuit also has not adopted these interpretations. Sections 922(a)(5) and (d)(1) are criminal firearms statutes that include the language "reasonable cause to believe." Subsection *(a)* below addresses the Fourth and Fifth Circuits' interpretations of § 922(d)(1). Subsection *(b)* addresses the Seventh Circuit's interpretation of § 922(a)(5).

*(a)  18 U.S.C. § 922(d)(1)*

The Fourth and Fifth Circuits' interpretation of 18 U.S.C. § 922(d)(1) are unpersuasive because they include no reasoning. Again, § 922(d)(1) makes it "unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or *having reasonable cause to believe* that such person . . . is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(d)(1) (emphasis added).

The Fourth and Fifth Circuits require it to be true that the person to whom the defendant sold or disposed of the firearm was convicted of or indicted for a felony. The Fifth Circuit adopted this reading in a single sentence, stating "[u]nder 18 U.S.C. § 922(d)(1), it is the purchaser's status as a felon which makes the activity criminal." *United States v. Murray*, 988 F.2d 518, 522 (5th Cir. 1993). The Fourth Circuit assumed the same interpretation of § 922(d)(1) by holding that a defendant "would not have violated the law when she transferred ammunition to her brother" if her brother had not in fact "been a[n] individual convicted of a 'crime

punishable by imprisonment for a term exceeding one year.'" *United States v. Parker*, 262 F.3d 415, 421 (4th Cir. 2001) (quoting 18 U.S.C. § 922(d)(1)).[7]

The Ninth Circuit has not adopted *Murray* and *Parker*'s reading of § 922(d)(1), and neither *Murray* nor *Parker* provide reasons to do so.

### (b) 18 U.S.C. § 922(a)(5)

Ferrari also relies on *United States v. Kraase*, which interpreted 18 U.S.C. § 922(a)(5) to include an "it must be true" requirement. 484 F.2d 549, 551 (7th Cir. 1973). Section 922(a)(5) states "it shall be unlawful—for any person . . . to transfer, sell, trade, give, transport, or deliver any firearm to any person . . . who *the transferor knows or has reasonable cause to believe* does not reside in . . . the State in which the transferor resides . . ." 18 U.S.C. § 922(a)(5) (emphasis added). *Kraase* departed from the plain text because of § 922(a)(5)'s amendment history and a reluctance to intrude on state police powers. Neither reason is present here.

Before being amended, § 922(a)(5) required the defendant and the person to whom the defendant transferred the firearm to reside in different states. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90-351 (June 19, 1968), 82 Stat. 197, 229. The statute did not specify a *mens rea*. *Id.* Congress added the "knows or has reasonable cause to believe" language in October 1968 amendments. *See* Gun Control Act of 1968, Pub. L. No. 90-618 (Oct. 22, 1968), 82 Stat. 1213, 1217-18. *Kraase* recognized that, as

---

[7] Not only did *Parker* provide no reasoning for its interpretation of § 922(d)(1), but the Fourth Circuit went the other way when interpreting similar language in 18 U.S.C. § 922(a)(5), as discussed in the next subsection.

amended, the "literal language" of § 922(a)(5) would criminalize firearms sales between residents of the same state, so long as the defendant had "reasonable cause to believe" the buyer was a resident of a different state. 484 F.2d at 551.

*Kraase* rejected the "literal language" of § 922(a)(5) because "punish[ing] the unlicensed sale of firearms" even between residents of the same state would "dramatically intrude[] upon traditional state criminal jurisdiction." *Id.* (internal quotation marks and citation omitted). "In view of the complete absence of legislative history supporting such an unusual reach of federal authority," *Kraase* "concluded that it [was] highly improbable that Congress intended such a result." *Id.*; *see also United States v. Plyman*, 551 F.2d 965, 967 (5th Cir. 1977) ("Congress did not intend to regulate sales of firearms between residents of the same state."). According to the Seventh Circuit, the better reading of the revised § 922(a)(5) was that adding "the 'reasonable cause to believe' clause serve[d] merely to lighten the Government's burden of proving subjective intent." *Kraase*, 484 F.2d at 551.

*Kraase*'s interpretation of § 922(a)(5) provides no persuasive reason for us to depart from Application Note 13's plain text. First, the firearms trafficking enhancement and Application Note 13 have no amendment history analogous to § 922(a)(5)'s amendment history. From the start, the firearms trafficking enhancement and Application Note 13 have included the *mens rea* "knew or had reason to believe."[8] Second, our interpretation of Application Note 13

---

[8] The first Sentencing Guidelines in 1987 provided for a sentencing enhancement "[i]f the defendant knew or had reason to believe that a purchaser was a person prohibited by federal law from owning the

poses no threat of "intrud[ing] upon traditional state criminal jurisdiction" because sentencing enhancements do not create new federal crimes. *Id.* Thus, *Kraase*'s reasoning is inapplicable.

Consistent with recognizing these important differences between interpreting 18 U.S.C. § 922(a)(5) and the firearms trafficking enhancement, the Seventh Circuit interpreted Application Note 13 according to the ordinary meaning of "reason to believe." *See Prieto*, 85 F.4th at 449 ("Given the 'reason to believe' language in the application note [] we agree with the government that the confidential source need not actually be a prohibited person.").

Finally, the Fourth Circuit disagreed with *Kraase*. The Fourth Circuit held that "a plain reading of the statute brings . . . within its provisions" a sale by a Maryland-based defendant who "had 'reasonable cause to believe' that [the buyer] lived in Virginia," even if the buyer in fact also lived in Maryland. *United States v. Colicchio*, 470 F.2d 977, 979 (4th Cir. 1972). On a plain reading, it sufficed that the defendant had "reasonable cause to believe" that the buyer lived in another state even if that belief was false. *Id.* This, again, reinforces that "reason to believe" and "reasonable cause to believe" do not include an "and it must be true" requirement.

---

firearm." U.S.S.G. § 2K2.3(b)(2)(A) (1987 ed.). Amendment 691 (2006) retained the same "knew or had reason to believe" language in Application Note 13 to the firearms trafficking enhancement in § 2K2.1(b)(5). *See* U.S.S.G. App'x C, Vol. III, Amendment 691 (2006). Amendment 819 (2023) moved the text of Application Note 13 into the guideline itself and changed the language slightly to "knowing or having reason to believe . . ." *Id.*, Vol IV at 225.

Thus, out of circuit interpretations of § 922(a)(5) and (d)(1) do not provide any persuasive reason for us to depart from Application Note 13's plain text, which states that the firearms trafficking enhancement applies if the defendant "had reason to believe" the transferee was an unlawful possessor or intended to use the firearm unlawfully.

### 3. Amendment 819 to the United States Sentencing Guidelines

Lastly, Ferrari argues that a statement in the Sentencing Commission's "Reason for Amendment" 819 (2023) to the firearms trafficking enhancement supports Ferrari's reading. The Commission stated that Amendment 819 removes certain "limiting criteria in the existing Application Note 13" including "that the recipient *have* criminal convictions for specific crimes." U.S.S.G. App'x C, Vol. IV at 230 (emphasis added). Ferrari argues that the Commission's statement assumes that, prior to Amendment 819, one of the limiting criteria in Application Note 13 was that the firearms trafficking enhancement only applied if it was true that the transferee had criminal convictions.

Ferrari's argument lacks merit. The Sentencing Commission clearly explained which limiting criteria Amendment 819 removed. Amendment 819 added a new subsection, § 2K2.1(b)(5)(B), "to provide an increase for defendants . . . who would not have received the trafficking enhancement prior to the amendment because of the limiting criteria in the existing Application Note 13." The two limiting criteria, according to the Commission, were "[1] trafficking two or more firearms and [2] that the recipient have criminal convictions for specific crimes." *Id.* The new subsection, § 2K2.1(b)(5)(B), removed these limiting criteria by (1) applying to transfers of just one

firearm or any ammunition, and (2) applying to transfers to a "prohibited person," a significantly broader category than recipients with "criminal convictions for specific crimes."**[9]** Nowhere did the Commission state that pre-amendment, one of Application Note 13's limiting criteria was that it must be true that the recipient had criminal convictions.

As Ferrari acknowledges, where the Commission intends to resolve a Circuit split over how to interpret an enhancement, it does so explicitly and clarifies the relevant language. Notably, Amendment 819 retained the "reason to believe" language, notwithstanding the existing Circuit split over how to interpret it. *See id.* at 225. And despite retaining the same language, the Commission did not address, let alone resolve, the Circuit split over what it means.

## CONCLUSION

Because there is no reason to depart from the plain text, we hold that Application Note 13 to § 2K2.1(b)(5) of the 2021 United States Sentencing Guidelines does not require that what the defendant had reason to believe was true. On appeal, Ferrari does not dispute that he had reason to believe the undercover agents were unlawful possessors or intended to use the firearms unlawfully. Therefore, the district court correctly interpreted Application Note 13 and did not abuse

---

[9] The 2021 Guidelines defined unlawful possessor as someone who has or had "a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence." U.S.S.G. § 2K2.1, cmt. n.13(B) (2021); U.S.S.G. § 2K2.1(b)(5)(C) (2023). A "prohibited person," however, is "any person described in 18 U.S.C. § 922(g) or § 922(n)." U.S.S.G. § 2K2.1, cmt. n.3 (2023). Section 922(g) also covers, for example, those "addicted to any controlled substance"; those "committed to a mental institution"; an "alien" who is unlawfully present in the United States; and veterans with dishonorable discharges. 18 U.S.C. § 922(g)(3)-(6).

its discretion by applying the firearms trafficking enhancement.

**AFFIRMED.**[10]

---

[10] The government's Motion to Transmit Physical Exhibits (Dkt. 21) is denied because reviewing the exhibits is not "necessary to resolution of an[y] issue" in this appeal. Ninth Cir. R. 27-14.